IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| ABN AMRO Mortgage Group, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:05-1720-RBH-WMC |
| vs. ) | |
| ) | |
| SAJJ, LLC, doing business as U.S. Capital of ) | |
|    South Carolina and U.S. Capital Funding, ) | **REPORT OF MAGISTRATE JUDGE** |
| Mark Anderson, also known as Mark D. ) | |
|    Anderson, doing business as Creative ) | |
|    Solutions Group, ) | |
| Mark Stewart, also known as Mark A. Stewart, ) | |
|    doing business as Creative Solutions Group, ) | |
| Alex J. Newton, ) | |
| Morris Hardwick Schneider, LLC ) | |
| H. Michael Spivey, ) | |
| Nicholas D. Atria, ) | |
| Charles L. Grogan, ) | |
| Charles W. Grogan, ) | |
| Eunice F. Grogan, ) | |
| The Epps Company, Inc. ) | |
| Byron B. Epps, and ) | |
| Wilmer Raymond Ammons, ) | |
| ) | |
| Defendants. ) | |
| ) | |

       This matter is before the court on the motion of defendant Nicholas D. Atria for summary judgment. This litigation concerns a group of consumer mortgage loans now owned by the plaintiff. The plaintiff claims that a series of bad acts by the defendants related to the origination of those mortgage loans deceived it as to the true nature of the transaction and the value of the real property offered as mortgage collateral, and that those bad acts caused the plaintiff damages. This case involves a several defendants, one of whom, Mark D. Anderson, is proceeding *pro se*.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

Defendant Atria was the closing attorney for one of the real estate transactions at issue in this case. The court will consider the facts in the light most favorable to the plaintiff, who is the non-moving party. Pursuant to the terms of the Wholesale Lending Agreement between the plaintiff and U.S. Capital, the plaintiff purchased mortgage loans from U.S. Capital. The plaintiff purchased the loan that Atria closed from U.S. Capital. On February 20, 2002, Atria closed a purchase money mortgage loan transaction whereby the plaintiff loaned Telisa Grays funds to purchase real property commonly known as 2409 Preston Street, Columbia, South Carolina. Atria served as the plaintiff's attorney in the closing of the Grays loan. The plaintiff issued Atria specific directions on the closing of the Grays loan. The closing instructions required that title to the Preston Street Property be vested in Grays and provided that, if the transaction did not close by February 20, 2002, all closing documents and funds were to be returned to the plaintiff. Atria provided title insurance documentation to the plaintiff that represented that Grays was owner of the mortgaged property at the time the mortgage was placed on the Preston Street Property. The plaintiff alleges that by closing the Grays loan and disbursing its proceeds, and providing the plaintiff with copies of the closing documentation, Atria represented to the plaintiff that the loan was closed pursuant to its instructions. The plaintiff further alleges that by signing the HUD-1 Settlement Statement dated February 20, 2002, Atria represented that he disbursed funds as reflected in that statement (Michael Watts aff. ¶¶ 1-16).

Appraiser Bruce Johnson appraised the property at a value of $169,000 in a report dated January 9, 2002 (Atria m.s.j., ex. A). Grays did not own the Preston Street Property at the time of the execution of the mortgage on February 20, 2002. On February 21, 2002, Mark Anderson acquired title to the Preston Street Property from

David A. Donnelly. Anderson paid $50,000.00 for the Preston Street Property. On the same day, Mark Anderson conveyed the Preston Street Property to Grays for $169,000.00. Both deeds reflect that Atria prepared them. Further, Atria did not disburse funds pursuant to the representations in the HUD-1 Settlement Statement on February 20, 2002. The plaintiff contends that the following irregularities are apparent on comparison of the HUD-1 Settlement Statement to the disbursement checks provided by Atria:

> (1)    $49,734.87 of the proceeds of the sale to Grays that should have been paid to Mark Anderson were used to fund the purchase from David Donnelly.
>
> (2)    $188.89 was paid to Telisa Grays, but there is no provision for that payment on the settlement statement.
>
> (3)    $50.00 was paid to April Moore, but the settlement statement does not describe this payment.
>
> (4)    The settlement statement on the Grays purchase requires the payment of $75.00 to Calhoun Street Title Insurance Company that was not made.
>
> (5)    $348.15 of the proceeds from the Grays loan transaction were paid to Midlands Title, which payment does not appear on the settlement statement for that closing.

The only information in the plaintiff's file relating to the status of title to the Preston Street Property is the title insurance documents provided to the plaintiff by Atria. The plaintiff contends that prior to this litigation it did not have copies of the deeds at issue. The plaintiff's file on the Grays loan does not contain copies of the Grays loan disbursement checks issued by Atria through which the plaintiff could have determined that the proceeds of the Grays loan were not disbursed in accordance with the HUD-1 Settlement Statement. Grays defaulted on the Grays loan by not making the payment due on December 1, 2002 (Michael Watts aff. ¶¶ 1-16). Following that default, the plaintiff initiated foreclosure on the Grays loan by filing a lis pendens, summons, and complaint on April 24, 2003. The plaintiff filed the complaint at issue in this case against Atria and the other defendants on June 15, 2005.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

In its complaint, the plaintiff contends that appraisal reports that were prepared in connection with the sale of the properties in this case contained false and grossly inflated values for the properties (comp. ¶ 30(a)). The plaintiff claims that the documents that the closing attorneys prepared as a part of the 100-plus real estate transactions at the heart of this case contained these exaggerated and progressively increasing false values for the properties in question (comp. ¶ 31(f)). The plaintiff alleges that the closing attorneys' efforts knowingly aided efforts to deceive the plaintiff and others as to the true value of the properties involved in these closings (comp. ¶ 31(f)). The plaintiff further claims that the closing attorneys did not collect and disburse funds as represented in the closing statements for the loans (comp. ¶ 31(l)). Finally, the complaint alleges that the closing attorney that administered a subject loan was responsible for assuring, among other things, that the plaintiff's closing instructions were followed before funds were disbursed; the loan documentation was appropriate, proper and accurate; the necessary disclosures were provided to the borrower; the borrower completed the necessary documentation; the

proceeds of the loan and the funds collected at closing were disbursed as stated in the settlement statement; all closing conditions were met; and the documents to be recorded were properly recorded (comp. ¶ 28).

The plaintiff brought six causes of action against all of the defendants. These claims are for violation of the Unfair Trade Practices Act, fraud, negligent misrepresentation, civil conspiracy, and violations of §1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. In addition to these causes of action, the plaintiff has made a claim of professional negligence against Atria and the other closing attorneys named in this suit.

Defendant Atria has moved for summary judgment on all claims except the RICO claim. Atria argues that these claims are barred by the applicable statutes of limitations. The claims are all subject to three-year statutes of limitations. *See* S.C. Code Ann. §§15-3-530(5) (as to the tort actions for fraud, negligent misrepresentation, civil conspiracy, and professional negligence) and 39-5-150 (as to the Unfair Trade Practices Act claim). The complaint in this case was filed on June 15, 2005. For actions initiated under §15-3-530(5), the statute of limitations accrues at the time when facts and circumstances would put a person of common knowledge on notice that there might be a claim against another party. *True v. Monteith*, 489 S.E.2d 615, 616 (S.C. 1997) (citing *Kreutner v. David*, 465 S.E.2d 88 (S.C. 1995)). Under South Carolina's "discovery rule" the statute of limitations begins to run from the date the injured party either knows or should know by the exercise of reasonable diligence that a cause of action exists for wrongful conduct. S.C. Code Ann. §15-3-535.

According to Atria, he submitted all of the documentation required by the plaintiff's closing instructions on February 21, 2002. Further, at 5:25 p.m. that day, he called his contact person at the plaintiff's place of business, Camille, and informed her that the Grays closing involved a simultaneous closing and that the title binder did not accurately

6

reflect the requirements in order to vest title with Grays.  He claims he was informed by Camille that as long as the lender was in a first lien position, the plaintiff was satisfied (Atria m.s.j., ex. F).  Thus, Atria argues that the plaintiff either knew or by the exercise of reasonable diligence should have known that it had a cause of action against him at the very latest on February 21, 2002 (Atria m.s.j. 8).

The plaintiff argues that the statute of limitations has not expired because it did not have sufficient information to put it on notice that there might be a claim against Atria until after it initiated foreclosure proceedings against Grays for her failure to make the December 1, 2002, loan payment.  Thus, the plaintiff argues that its claims are timely.

According to the plaintiff, its file on the Grays loan contained only its closing instructions and other documents associated with the loan.  There was no indication in the plaintiff's file of the "grossly inflated value of the property."  While Atria told the plaintiff that he closed simultaneous transactions, he never put the plaintiff on notice of the increased value of the property.  He told the plaintiff he closed the loan, but he never notified the plaintiff that the mortgagor did not own the mortgaged property until the day after the Grays loan closed.  Further, he signed a HUD-1 reflecting the disbursement of closing funds, but actually disbursed the closing funds in a manner not reflected by that HUD-1 settlement statement.

The plaintiff argues that it had no reason to suspect any impropriety on the part of Atria until after it began foreclosure proceedings on the Grays loan.  The investigation of the Grays loan through a title examination and, much later, an examination of Atria's file on the Grays loan were the events that gave the plaintiff notice that it might have a claim against Atria.  The plaintiff further argues that its knowledge, after the time of closing, of a title insurance binder showing title vested in David A. Donnelly, Jr., and a contract of sale between Mark Anderson and Grays gave it no notice of wrongful conduct by any party to the

transaction. The plaintiff relied on Atria as its legal counsel to assure that title to the property would vest in Grays at the time the loan closed (pl. resp. m.s.j. 13-14).

The plaintiff cites *True v. Monteith*, 489 S.E.2d 615 (S.C. 1997), in support of its position. In *True*, the South Carolina Supreme Court defined the obligation and duty of an attorney to its client. The court said that knowledge of injury is not sufficient to put a client on notice of possible attorney malfeasance and a client should not be required to investigate an attorney's loyalty every time the attorney provides the client with information it dislikes. "A client should be able to rely on the attorney [ ] … without fear that the attorney is not acting in the client's best interest." *Id.* at 617.

The plaintiff further argues that Atria's motion for summary judgment is premature as the parties have not yet completed discovery.[1] Atria has not been deposed and, according to the plaintiff, he has not yet provided the plaintiff with his entire file on the loan at issue.

Based upon the foregoing, the defendant has not met his burden of showing that no issues of material fact remain and that he is entitled to judgment as a matter of law because the plaintiff's claims against him are barred by the statute of limitations.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant Atria's motion for summary judgment be denied at this time.

s/William M. Catoe
United States Magistrate Judge

March 9, 2006

Greenville, South Carolina

---

[1] Under the scheduling order, discovery is scheduled to end on or before May 26, 2006.

8