IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| ABN AMRO Mortgage Group, Inc., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SAJJ, LLC, doing business as U.S. Capital of )<br>  South Carolina and U.S. Capital Funding, )<br>Mark Anderson, also known as Mark D. )<br>  Anderson, doing business as Creative )<br>  Solutions Group, )<br>Mark Stewart, also known as Mark A. Stewart, )<br>  doing business as Creative Solutions Group, )<br>Alex J. Newton, )<br>Morris Hardwick Schneider, LLC )<br>H. Michael Spivey, )<br>Nicholas D. Atria, )<br>Charles L. Grogan, )<br>Charles W. Grogan, )<br>Eunice F. Grogan, )<br>The Epps Company, Inc. )<br>Byron B. Epps, and )<br>Wilmer Raymond Ammons, )<br>)<br>Defendants. )<br>) | Civil Action No. 7:05-1720-RBH-WMC<br><br>**O R D E R** |

      This matter is before the court on the motion of defendants Epps Company, Inc., and Byron B. Epps to compel responses to their second set of discovery requests. This litigation concerns a group of consumer mortgage loans now owned by the plaintiff. The plaintiff claims that a series of bad acts by the defendants related to the origination of those mortgage loans deceived it as to the true nature of the transaction and the value of the real property offered as mortgage collateral, and that those bad acts caused the plaintiff damages.

      This case involves a several defendants, one of whom, Mark D. Anderson, is proceeding *pro se*. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The plaintiff brought six causes of action against all of the defendants. These claims are for violation of the Unfair Trade Practices Act, fraud, negligent misrepresentation, civil conspiracy, and violations of §1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. The moving defendants have raised the defense of comparative negligence, arguing that the plaintiff's negligence, including its poor underwriting practices, caused more than 50% of any damages the plaintiff may have suffered.

A telephonic hearing on the motion to compel was held before this court on Tuesday, May 2, 2006, in which the attorneys for the interested parties participated. This court directed the plaintiff to arrange a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) of the person or persons who could testify as to the plaintiff's loan originating and underwriting systems, how those systems work, and how records on those systems are maintained. The Rule 30(b)(6) deposition of Frederic Richter, an employee of the plaintiff, who is the Vice President and Manager, Mortgage Resource Group, InterFirst Wholesale Mortgage Lending, was held on Wednesday, May 3, 2006, at 12:00 p.m. On May 19, 2006, this court stayed discovery while considering a motion to consolidate this matter with another. On August 3, 2006, this court granted the motion to consolidate with regard to discovery and denied the motion to consolidate for trial. The moving defendants supplemented their motion to compel on September 20, 2006, and the plaintiff filed a supplemental memorandum in opposition on October 10, 2006.

The first discovery request at issue is the following:

**Interrogatory No. 3**
For each loan identified and described in response to Interrogatory No. 1 of this Second Set of Interrogatories, identify each and every employee and/or representative of ABN AMRO Mortgage Group, Inc. (including any of its parents, affiliate companies, and subsidiaries) who received and reviewed a loan package concerning the property, made any recommendations concerning whether to have ABN AMRO Mortgage Group, Inc.

> fund the loan, or participated in the actual decision concerning the funding of the loan. For each person listed, identify the loan number and property with which the person was involved and identify the task performed by and/or action taken by the person (i.e., receipt and review of loan package, in whole or in part; recommendations concerning whether to have the loan funded; participation in the actual decision concerning the funding of the loan).

(Interrog. no. 3).

The next interrogatory at issue requests the following:

**Interrogatory No. 5**
For each loan at issue in this lawsuit, identify the person or persons employed by or working as an independent contractor for the Plaintiff responsible for deciding whether to issue any and all commitments concerning the loan.

(Interrog. no. 5).

In their supplemental memorandum, the moving defendants (def. supp. m. to compel 6-7) note that Mr. Richter testified in the Rule 30(b)(6) deposition that staff underwriters and credit analysts are primarily responsible for the in-house underwriting tasks performed on each loan. Every time one of these ABN AMRO employees takes action on a loan, their identity as the "actor" is documented in one of several screens in the MUPIT internal computer database. This database contains the identity of each person who has taken action on a loan, including the person who made the decision to fund and who made the final approval (Richter dep. 52-54, 59-61, 68-71, 90-91). According to Mr. Richter, ABN AMRO has organized its computer database so that ABN AMRO can locate this information for each loan by entering the loan number into the system, which will in turn pull the pertinent information for that loan, and ABN AMRO can then print the information shown on the various screens to produce in paper form (Richter dep. 60-61). Thus, the moving defendants argue that the court should at the very least require ABN AMRO to print the computer data for each loan at issue in this lawsuit and provide the documents to the defendants.

The plaintiff responded to the supplemental motion to compel stating that it "has investigated its systems and has determined that it could provide computer-generated information concerning these loans" (pl. resp. supp. m. to compel 3). According to the plaintiff:

> The Plaintiff can produce the MUPIT tables showing the identities of loan officer, underwriters, customer service representatives and all other persons who worked on the approval of the loan, the clearance of funding for the loan, indicated that prior to closing conditions were either satisfied or waived or persons who reviewed post closing conditions. The information that could be provided will also indicate the exact function each person was performing as well as the date and time.
>
> The information that the Plaintiff proposes to produce can be generated within two (2) weeks. It will be computer generated and will not be verified. The verification process would require review of each loan by comparing the generated tables to the underwriting and loan documentation files. The underwriting and loan documentation files that the Plaintiff would use for the verification process have been made available to the Defendant Epps.

(Pl. resp. supp. m. to compel 4).

**Based upon the foregoing, the plaintiff is directed to produce the above information to the moving defendants on or before October 27, 2006.**

Lastly, the moving defendants seek to compel the plaintiff to produce its Articles of Incorporation, any all 10-Qs (performance reports that publicly traded companies must file with the Securities and Exchange Commission ("SEC")) pertaining to the plaintiff, and any and all tax returns filed by the plaintiff for the years 2000 to present (requests for prod. 5-7). The plaintiff objected to the requests on the basis of irrelevance. The defendants contend that the Articles of Incorporation and 10-Qs will contain information that defines the type of entity the plaintiff is, which in turn will lead to a better understanding of how the entity is regulated. They further contend that the tax returns will show how much income the plaintiff generated during the time the loans were funded, which may provide insight into any

internal changes made by the plaintiff to combat misconduct such as the misconduct that occurred with regard to HUD. The plaintiff argues again that the requested information with regard to the plaintiff's entity type and the agencies that regulate it could be obtained through a Rule 30(b)(6) deposition of a representative of the plaintiff. The plaintiff notes that it is not a publicly-traded entity and does not file 10-Qs with the SEC. The plaintiff further argues that the defendants have not shown how the tax returns are relevant to the claims and defenses in this action. In the supplemental memorandum in support of the motion to compel, the moving defendants do not address whether Mr. Richter, the plaintiff's Rule 30(b)(6) designee, was questioned on these points. **This court agrees with the plaintiff's position and finds that the documents sought by the moving defendants should not be produced.**

Wherefore, based upon the foregoing, the motion to compel is granted in part and denied in part as set forth above.

IT IS SO ORDERED.


s/William M. Catoe
United States Magistrate Judge

October 13, 2006

Greenville, South Carolina

5